UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHERI AND LEONARD COVERT, husband
and wife,

    Plaintiffs,

   v.

STATE OF WASHINGTON, et al.,

    Defendants.

No. CV-04-3070-FVS

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

  **BEFORE THE COURT** is Defendants' Motion for Summary Judgment, Ct. Rec. 24, and Plaintiffs' Motion to Strike, Ct. Rec. 107.  Plaintiffs are represented by Jeffrey Poole.  Defendants are represented by James Harmony.

**I.    BACKGROUND**

  The following facts are taken from the parties' Statements of Material Facts.  Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, the Court deems admitted any fact asserted by a party and not rebutted by the opposing party.  Except where otherwise noted, the parties do not dispute any of the facts recited in this section.

  On April 27, 2000, the Washington State Department of Social and Health Services ("DSHS") received a report from a school counselor that Leonard Covert had physically abused his biological daughter T.C. and a foster child, L.B., who was living at the home of Leonard and Cheri Covert.  It was alleged that Mr. Covert hit his daughter T.C., giving her a black eye, and that Mr. Covert hit L.B. in the back of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

the head while she was in a kneeling position, knocking her face into the floor and causing a bloody nose.  These allegations were investigated[1] by both the Yakima County Sheriff's Department ("Sheriff's Department") and Defendant Michael Grogan from the DSHS, Division of Licensed Resources/Child Protective Services ("DLR/CPS").

The criminal investigation resulted in two charges of fourth-degree assault against Mr. Covert and one count of rendering criminal assistance against Mrs. Covert.  As part of the criminal investigation and pursuant to a search warrant, the Sheriff's Department obtained from the Covert's home a square of carpet containing L.B.'s blood and towels that were saturated with L.B.'s blood.  The Sheriff's Department also obtained pictures of T.C. with a black eye.  The criminal charges were ultimately dismissed pursuant to a stipulated continuance subject to the fulfillment of conditions requiring Mr. Covert to address his anger management problem.

The CPS investigation resulted in two findings of physical abuse against Mr. Covert and one finding of physical neglect against Mrs. Covert.  These findings were based on Mr. Covert's alleged admission to Defendant Grogan that he hit T.C. and caused her black eye.  Mr. Covert now contends he "did not assault his daughter T.C.", but it is unclear whether Mr. Covert denies admitting hitting T.C. to Defendant

---

[1] Plaintiffs contend that "whether this was truly an 'investigation' or was instead part and parcel of the overall wrongful conduct which violated the Covert's protected rights in [sic] an issue of material fact." *Plaintiffs' Reply to Statement of Material Facts*, at 3:19-21.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

Grogan.[2]

During the process of these investigations, the Sheriff's Department took T.C., as well as the Covert's adopted sons, A.C. and J.C., into protective custody of the State.  Pursuant to court orders, T.C. and L.B. were removed from the home on April 27, 2000, and A.C. and J.C. were removed on April 29, 2000.  Pursuant to the Shelter Care Order, T.C. was placed in relative placement with Sandy Tabor, Mr. Covert's sister.  Thereafter, T.C. was found dependent as to Mr. and Mrs. Covert pursuant to two separate agreed orders.  On January 9, 2001, the dependency action was dismissed and T.C. returned home. A.C. and J.C. were also found dependent pursuant to agreed orders and were placed in licensed foster care pursuant to a court order.  The boys returned home after the dependency actions were dismissed on August 4, 2000.

Before A.C. and J.C. returned home, Mrs. Covert reported to CPS on May 18, 2000, and May 19, 2000, that she believed A.C. and J.C. were being spanked.  Specifically, on May 18, 2000, Defendant Mary Martinez, social worker for the Covert children, received a call from Linda Coleman, Guardian ad Litem for A.C. and J.C., stating that Ms. Covert "reported that the boys are reporting that they are being spanked."  This was investigated by CPS but did not result in any violation.  On June 6, 2000, Defendant Debra Bond, the new social worker for the Covert children, received a telephone call from Mrs. Covert, inquiring about her boys' behaviors, specifically, "aggression

---

[2] This dispute is not material to the issue before the Court.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

towards each other, anger, sexual acting out." Mrs. Covert also told Debra Bond: "Now I know something happened to my baby in the first FH [foster home], if he is acting out sexually. You people have really damaged my boys." Further, on July 25, 2000, Mrs. Covert told Defendant Debra Bond that A.C. and J.C. were "being abused more in FC [foster care] than at home." In response to this call, on the same day, Defendant Debra Bond initiated a licensing referral to investigate this incident. An evaluation was conducted, but did not result in any violation.

The Plaintiffs' allege that after the Covert children returned home the "State told Ms. Covert that she was a 'target', that if she 'shut up' the State would not have done anything, that its actions, including the 'investigation' of and charges against Leonard Covert were part of a 'witch hunt', that the State was 'out to get [Mrs. Covert]', and that the State has now admitted that 'it did not have all the information' that instead would have caused the case to be handled differently."

On November 10, 2003, Plaintiffs filed this lawsuit in Washington State Superior Court in Thurston County against the State of Washington, Department of Social and Health Services, and individually named state employees, Debbie Bond, Greg Dootson, Michael Grogan, Lucy Stephens, Janice Jiles, Erika Massett, Tim Abbey, Carlos Carrillo, Alfonso Garcia, Mary Martinez, Carlos Saldivar and Mike Smith (hereinafter the "Defendants"). On February 18, 2004, Plaintiffs dismissed all of their state law claims, leaving only the federal civil rights claims. On March 11, 2004, this case was removed to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

United States District Court in the Western District of Washington. By stipulation, this matter was transferred to the Eastern District in June 2004.  Defendants now move for summary judgment on Plaintiffs' remaining claims alleging civil rights violations under 42 U.S.C. § 1983 and the Washington State Constitution.

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316, 323, 106 S.Ct. 2548, 2552 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but the non-moving party must do more than show that there is some "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 572, 586-87, 106 S.Ct. 1348, 1356 (1986).  The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact, *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993), and must respond with something more than conclusory allegations, speculation or argumentative assertions that unresolved factual issues exist.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).  A district court must enter summary judgment against a party who fails to make a showing sufficient to establish and

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

essential element of a claim, even if genuine issues of fact exist regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548. There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). Thus, a mere "scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Id.* at 252, 106 S.Ct. at 2512.

### B.    Eleventh Amendment Immunity

"The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). Here, the State of Washington has not waived its immunity. Further, Plaintiffs acknowledge that the State of Washington and its agencies are immune from suit under 28 U.S.C. § 1983. Thus, the Court determines that the State of Washington and the Department of Health and Human Services are dismissed with prejudice as defendants from this action. The Eleventh Amendment also bars the Plaintiffs' remaining claims against the individual defendants in their official capacities. *Romano*, 169 F.3d at 1186. However, the Eleventh Amendment imposes no bar to Plaintiffs' claims against the individual defendants in their personal capacities.

### C.    Absolute Immunity

"State actors, including social workers, who perform functions

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

that are critical to the judicial process itself are entitled to absolute immunity." *Doe v. Lebbos*, 348 F.3d 820, 826 (9th Cir. 2003) (citations and quotations omitted).  Specifically, social workers are afforded "absolute prosecutorial immunity" for "initiating and pursuing child dependency proceedings, and in seeking and obtaining a court order for the seizure and placement of a newborn child" and "absolute quasi-judicial immunity" in cases where "a child protective services worker ... executes a court order for seizure and placement of a child [.]"  *Id.* at 989 (quotations omitted); *see e.g., Doe*, 348 F.3d 826 (finding that allegations that social worker failed to investigate possible exculpatory evidence and fabricated evidence in the dependency petitions had the "requisite connection to the judicial process" to be protected by absolute immunity); *Mabe v. San Bernardino County Dept's of Public Soc. Servs.*, 237 F.3d 1101, 1109 (9th Cir. 2001) (holding, where there were allegations that social workers did not conduct their investigation properly, that the social workers were entitled to absolute immunity because their actions were part of the initiation and pursuit of dependency proceedings).  "To the extent, however, that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available."  *Millie v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003).

Here, Plaintiffs' acknowledge Defendants are entitled to absolute immunity for their actions involving the investigation and filing of a dependency action for the Covert children.  However, Plaintiffs argue it is the actions of the Defendants relating to the Covert children

while they were in the care and custody of the State that violated Plaintiffs' constitutionally protected liberty interest in the companionship of their children. Specifically, Plaintiffs argue their parent-child relationship was damaged by their children's stay in foster care because (1) "the State" told Mrs. Covert that she and her husband were part of a retaliatory "witch hunt" by the State of Washington and their employees and that "the State has now admitted that 'it did not have all the information' that instead would have caused the case to be handled differently", (2) the Defendants ignored and refused to investigate important information provided by Mrs. Covert regarding T.C.'s birth mother and the dangers of placing T.C. in the relative placement with Mr. Covert's sister; and (3) the children were abused and mistreated in foster care.[3]

     None of Plaintiffs' allegations are specific to any of the named defendants. Further, no evidence has been presented to assist the Court in determining whether Plaintiffs' claims involve discretionary acts of the Defendants. Therefore, based on the record submitted, the Court cannot determine if the Defendants' actions related to these claims are entitled to absolute immunity.

//

---

     [3] This list only includes those facts alleged in Plaintiffs' Statement of Material Facts. The Court did not comb through Plaintiffs' affidavits to determine if there were additional facts creating a material issue that were not mentioned in the statement of material facts because this is not required by the Local Rules or Ninth Circuit law. More importantly, the Court permitted Plaintiffs additional time and specifically directed Plaintiffs to file a responsive statement of material facts incorporating all material facts.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

### D.    Qualified Immunity

The qualified immunity begins with the "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* at 201, 121 S.Ct. at 2156. "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004).[4]

Plaintiffs have not cited any authority showing they have a "clearly established" right with respect to any of the allegations of wrongful conduct by the Defendants. Plaintiffs' allegations that Mrs. Covert was told the State was on a "witch hunt" is insufficient to defeat summary judgment because it fails to show a "clearly established" constitutionally right has been implicated. Further, Plaintiffs have not shown how the Defendants' failure to investigate nonspecific information about T.C.'s relative placement violated Plaintiffs' constitutional rights. Plaintiffs' memorandum only states in general terms that the Defendants violated Plaintiffs' constitutionally protected liberty interest as parents in the custody and care of their children and in the companionship and society of

---

[4] Plaintiffs' memorandum cites the wrong law with respect to the qualified immunity analysis.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

their children.  Plaintiffs rely on *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985) to support this argument.  *Kelson* held that a parent has a constitutionally protected liberty interest in the companionship and society of his child and that the state's interference in that right without due process of law is remedial under section 1983.  *Id.*  However, here, Plaintiffs are not challenging the removal of their children from their home and they are not arguing that their children were removed from their home without due process.  Rather, Plaintiffs argue that the Defendants' decisions with respect to the Covert children after they were placed in the custody of the State violated Plaintiffs' constitutionally protected interest in their children.  Therefore, *Kelson* is inapplicable to the present case.

Plaintiffs' have not shown that a clearly established constitutional right was violated by Defendants.  Moreover, Plaintiffs have not shown or alleged which specific defendants violated that right.  This is insufficient to survive summary judgment on qualified immunity.  Therefore, Defendants' motion for summary judgment is granted on this basis.  Because the Defendants' motion for summary judgment is resolved on the issue of qualified immunity, the Court does not consider Defendants' argument that Plaintiffs' claims are barred by the applicable statute of limitations.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motion to Strike Defendants' Reply Statement of Material Facts and Supporting Affidavits, **Ct. Rec. 107**, is **DENIED** because both the Court's previous Order and the Local Rules clearly

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

1    permit such a reply statement by Defendants.

2       2.  Defendants' Motion for Summary Judgment, **Ct. Rec. 24**, is

3    **GRANTED** as indicated in this Order.

4       **IT IS SO ORDERED.**  The District Court Executive is hereby

5    directed to enter this Order, furnish copies to counsel, and **CLOSE THE**

6    **FILE**.

7       **DATED** this <u>1st</u> day of November, 2005.

8

9                    s/ Fred Van Sickle
                    Fred Van Sickle
10                  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11